UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x

In re:                                                      Chapter 11

Mariner's Gate LLC,                                         Case No. 25-12819-PB

                                    Debtor.

-----------------------------------------------------------------x

## DEBTOR'S AMENDED CHAPTER 11 LIQUIDATING PLAN

Mariner's Gate, LLC (the "Debtor") hereby proposes this Amended Chapter 11 liquidating plan (the "Plan") pursuant to the provisions of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code").

## FRAMEWORK OF THE PLAN

Despite losing the prospect of an immediate stalking horse buyer, the Debtor still intends to pursue an auction process relating to the sale (the "Sale") of the Debtor's commercial loft building located at 548 West 28th Street, New York, NY (the "Building"). The auction shall be conducted on May 5, 2026 pursuant to proposed bid procedures (*See,* ECF No. 68) based upon revised milestone dates as set forth in the Disclosure Statement. The auction shall run concurrently with the Debtor's efforts to obtain confirmation of this Plan, which is the vehicle to close on a sale of the Building and the mechanism by which the proceeds generated from such sale, if any (hereinafter, the "Sale Proceeds") shall be distributed to the holders of allowed secured, administrative, priority and unsecured claims consistent with the priority scheme under the Bankruptcy Code.

# ARTICLE I

## DEFINITIONS

All capitalized terms used herein shall have the meanings set forth below.  Unless otherwise specified, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply to the Plan.

1.1 "**Adjourned Cure Dispute**" shall have the meaning set forth in Section 6.4.

1.2 "**Administrative Claims Bar Date**" means the deadline by which all requests for payment of Administrative Expense Claims (excluding Professional Fee Claims and Section 503(b)(9) Claims) must be filed and served on the Debtor, which shall be 4:00 p.m. (Eastern Time) on the date that is thirty (30) days after the Effective Date.

1.3 "**Administrative Expense Claim**" means a Claim for the costs and expenses of administering the Chapter 11 Case under sections 503(b) and 507(b) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses of maintaining and preserving the Building; and (b) Professional Fee Claims; provided, however, that no Claim held by, arising from, or payable to any Insider of the Debtor shall constitute or be Allowed as an Administrative Expense Claim.

1.4 "**Allowed**" means (a) any Claim allowed under the terms of this Plan, and (b) with reference to any other Claim, proof of which was timely and properly filed by the General Claims Bar Date or the Governmental Claims Bar Date, as applicable, or, if no proof of Claim was filed, that was scheduled by the Debtor as being liquidated and undisputed, and as to which: (i) no objection to allowance has been interposed within the applicable period fixed by the Plan; or (ii) an objection has been interposed and such Claim has been allowed, in whole or in part, by a Final Order.

1.5 "**Assumption Dispute**" shall have the meaning set forth in Section 6.4 herein.

1.6 "**Assumption Schedule**" means the schedule of Executory Contracts and Unexpired Leases that will be assumed by the Debtor pursuant to the Plan and assigned to the Successful Purchaser, to be filed as part of the Plan Supplement, and as may be amended, supplemented, or modified from time to time in accordance with the Plan, Plan Supplement, and the Confirmation Order.

1.7 "**Bankruptcy Code**" means 11 U.S.C. §101 et seq.

1.8 "**Bankruptcy Court**" means the United States Bankruptcy Court for the Southern District of New York.

1.9 "**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure.

1.10    "**Business Day**" means any day other than a Saturday, Sunday, or other day on which commercial banks in New York, New York are authorized or required by law to close, or other Legal Holiday.

1.11    "**Cash Collateral Stipulation**" means the *Stipulation and Order Authorizing Interim Use of Cash Collateral and Grant of Adequate Protection to JPMorgan Chase Bank, N.A.* [ECF No. 37], as extended through at least April 30, 2026, pursuant to Notice dated April 8, 2026 and subsequently approved by Order of the Bankruptcy Court dated April 10, 2026 [ECF No. 94], all as may be further amended, modified or supplemented from time to time by order of the Bankruptcy Court.

1.12    "**Chapter 11 Case**" means the Chapter 11 proceedings of the Debtor.

1.13    "**Chase**" means JPMorgan Chase Bank, N.A. (as acquirer of certain assets and liabilities of First Republic Bank from the Federal Deposit Insurance Corporation as Receiver).

1.14    "**Claim**" means a claim against the Debtor as defined in section 101(5) of the Bankruptcy Code.

1.15    "**Claim Objection Deadline**" shall mean (a) with respect to any Claim filed on or before the Effective Date, thirty (30) days after the Effective Date, and (b) with respect to any Claim filed after the Effective Date, including Administrative Expense Claims and Rejection Damages Claims, thirty (30) days after the date such Claim is filed.

1.16    "**Closing**" means the day when the Debtor closes on the Sale of the Building.

1.17    "**Confirmation Hearing**" means the hearing or hearings before the Bankruptcy Court to consider confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code and final approval of the Disclosure Statement.

1.18    "**Confirmation Order**" means the order of the Bankruptcy Court approving the Sale and confirming the Plan pursuant to section 1129 of the Bankruptcy Code, which order shall be reasonably acceptable to Chase.

1.19    "**Credit Bid Rights**" means the rights of Chase and W Financial to credit bid pursuant to section 363(k) of the Bankruptcy Code.

1.20    "**Creditor**" means the holder of a Claim against the Debtor.

1.21    "**Cure Notice**" means the notice filed by the Debtor listing the potential executory contracts and unexpired leases that may be assumed and assigned to the Successful Purchaser. For the avoidance of doubt, the service of the Cure Notice is not a guarantee that such contracts and leases will ultimately be assumed and assigned to the Successful Purchaser.

1.22    "**Debtor**" means Mariner's Gate, LLC.

1.23    "**Debtor Release**" means the release set forth in Section 7.2 herein.

1.24    "**Debtor-Related Matters**" means any matter arising from or relating to the Debtor, the Debtor's estate, the Chapter 11 Case, the formulation, negotiation, confirmation, or implementation of the Plan, the treatment of any Claim or Interest under the Plan, any transaction contemplated by the Plan, or any act, omission, transaction, agreement, or occurrence involving the Debtor or its estate that took place on or before the Effective Date.

1.25    "**Disbursing Agent**" means Goldberg Weprin Finkel Goldstein LLP for the collection and distribution of the Sale Proceeds.

1.26    "**Disclosure Statement**" means the accompanying Disclosure Statement, filed by the Debtor in support of the Plan, including all exhibits and schedules thereto, as may be amended, supplemented, or otherwise modified from time to time in accordance with sections 1125 and 1126 of the Bankruptcy Code and other applicable law, in form and substance reasonably satisfactory to Chase.

1.27    "**Disputed Claim**" means (a) any Claim that is listed in the schedules filed by the Debtor in the Bankruptcy Court as disputed, contingent or unliquidated and with respect to which no Proof of Claim has been filed; and (b) any Claim, or portion thereof, that is under objection concerning the allowance and/or extent thereof, in whole or in part, pending on the Effective Date.

1.28    "**Disputed Claim Reserve**" means, to the extent necessary, the escrow established by the Debtor on the Effective Date with the Disbursing Agent for the deposit of cash equal to 100% of any disputed portion of the distribution that would be otherwise distributed under the Plan to any holder of a Disputed Claim; *provided*, for the avoidance of doubt, that holders of Disputed Claims shall receive a distribution in accordance with this Plan with respect to the undisputed portion of any Disputed Claim.

1.29    "**Effective Date**" means the date by which all conditions to the occurrence of the Effective Date set forth in Article VIIARTICLE VII of this Plan have been satisfied but in no event later than June 30, 2026.

1.30    "**Equity Interests**" means the 100% membership interest of the Debtor's sole member, West 125th Street Associates, LLC ("West 125th").

1.31    "**Executory Contract**" means a contract to which the Debtor is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

1.32    "**Final Order**" means an order or judgment of the Bankruptcy Court that has not been reversed, vacated, or stayed and as to which the time to appeal has expired or,

if an appeal has been taken, such order or judgment has not been stayed pending appeal.

1.33 "**General Claims Bar Date**" means April 21, 2026, which is the "Bar Date" pursuant to the *Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof* [ECF No. 70].

1.34 "**Governmental Claims Bar Date**" means June 15, 2026, which is the "Governmental Unit Bar Date" pursuant to the *Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof* [ECF No. 70]

1.35 "**Hudson Guild**" means Hudson Guild Temp Space LLC.

1.36 "**Insider**" shall have the meaning set forth in section 101(31) of the Bankruptcy Code. For the avoidance of doubt, the term "Insider" shall include Pinetree Group, Inc., Mr. James Y.A. Pastreich, and any entity directly or indirectly controlled by Mr. Pastreich.

1.37 "**Intercreditor Agreement**" means that certain *Intercreditor Agreement* between Chase and W Financial dated as of August 31, 2021.

1.38 "**Petition Date**" means December 16, 2025.

1.39 "**Plan**" means this Chapter 11 plan of liquidation.

1.40 "**Plan Supplement**" means any supplemental appendix to the Plan consisting of documents and forms of documents, agreements, schedules, and exhibits to the Plan (in each case, as may be altered, amended, modified or supplemented from time to time in accordance with the terms hereof and in accordance with the Bankruptcy Code and Bankruptcy Rules), which shall be filed by the Debtor no later than two (2) days before the Voting Deadline to accept or reject the Plan or such later date that may be approved by the Bankruptcy Court. The Plan Supplement shall include, among other things, the proposed sale and purchase agreement with the Successful Purchaser and Assumption Schedule. The Debtor shall have the right to amend the documents contained in, and exhibits to, the Plan Supplement through the Effective Date.

1.41 "**Priority Tax Claim**" means any Unsecured Claim of a federal, state or local taxing authority entitled to priority under section 507 of the Bankruptcy Code.

1.42 "**Professional**" means Goldberg Weprin Finkel Goldstein LLP.

1.43 "**Professional Fee Claim**" means a Claim for compensation for services rendered, and reimbursement of expenses incurred by Professionals as Allowed by the Bankruptcy Court on a final basis.

1.44   "**Proof of Claim**" means a Proof of Claim filed pursuant to section 501 of the Bankruptcy Code and the Bankruptcy Rules.

1.45   "**Property Transfer Instruments**" means the conventional conveyancing and tax documents and instruments, including a Bargain and Sale Deed, required to effect a transfer of real property in New York City, related assignment and assumption of leases documents, tax forms and other conventional certifications and affidavits.

1.46   "**Rejection Damages Claim**" means a Claim arising from the rejection of Executory Contracts or Unexpired Leases pursuant to the Plan or other order of the Bankruptcy Court.

1.47   "**Rejection Damages Claim Bar Date**" means the deadline by which all Rejection Damages Claims must be filed and served on the Debtor, which shall be 4:00 p.m. (Eastern Time) on the date that is thirty (30) days after the Effective Date.

1.48   "**Section 503(b)(9) Claim**" means a Claim entitled to administrative expense status arising under section 503(b)(9) of the Bankruptcy Code.

1.49   "**Secured Claim**" means the Claim of Chase and W Financial, the amount of which is equal to or less than the value of the Building.

1.50   "**Successful Purchaser**" means the entity or person submitting the highest and best offer to buy and acquire the Building, as approved by the Confirmation Order.

1.51   "**Transfer Taxes**" shall have the meaning set forth in Section 4.3 herein.

1.52   "**Unclassified Claim**" means an Administrative Expense Claim, Priority Tax Claim, or U.S. Trustee Fees.

1.53   "**Unexpired Lease**" means a lease to which the Debtor is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

1.54   "**Unsecured Claim**" means an Allowed general unsecured claim arising prior to the Petition Date not entitled to priority under the Bankruptcy Code or otherwise secured by property of the Debtor.

1.55   "**Unsecured Creditor**" means the holder of an Allowed Unsecured Claim against the Debtor.

1.56   "**U.S. Trustee Fees**" means fees payable pursuant to 28 U.S.C. § 1930, together with any statutory interest.

1.57   "**W Financial**" means W Financial REIT LLC.

# ARTICLE II

## UNCLASSIFIED CLAIMS

Pursuant to section 1123(a) of the Bankruptcy Code, the Plan does not classify Administrative Expense Claims, Priority Tax Claims, or U.S. Trustee Fees, all of which, to the extent Allowed, shall be paid in full in cash as required by section 1129(a)(9) of the Bankruptcy Code by the later of (i) the Effective Date, or (ii) the date on which such Claim becomes an Allowed Claim.

2.1    **Administrative Expense Claims**.  Administrative Expense Claims consist of the necessary and actual costs and expenses of maintaining, preserving, and selling the Building, many of which shall be paid in the ordinary course of the Debtor's post-petition business pursuant to the Cash Collateral Stipulation.  Besides operating expenses, Administrative Expenses also include (i) Allowed Professional Fees of the Debtor's counsel, Goldberg Weprin Finkel Goldstein LLP ("GWFG") as approved by Order of the Bankruptcy Court, and (ii) any allowed Broker's commission of Avison Young-New York LLC likewise as approved by the Bankruptcy Court. GWFG has agreed to cap its legal fees at $175,000 (net of the unused retainer) plus reasonable, documented expenses.  All requests for payment of Administrative Expense Claims must be filed by no later than the Administrative Claims Bar Date.  The Allowed Professional Fee Claims shall be paid by the Debtor or Disbursing Agent, as applicable, following Bankruptcy Court approval upon notice and a hearing.

2.2    **Professional Fees**.  All Professionals shall file a final application for services rendered no later than thirty (30) days after the Effective Date.  The Allowed Professional Fee Claims shall be paid by the Debtor or Disbursing Agent, as applicable, following Bankruptcy Court approval upon notice and a hearing.

2.3     **Priority Tax Claims**.  Any unpaid real estate taxes, assessments, or water charges that may be due and owing with respect to the Building prior to the Effective Date shall be treated as Priority Tax Claims and shall be paid by the Debtor on the Effective Date.

2.4     **U.S. Trustee Fees**.  On the Effective Date, the Debtor shall pay all outstanding U.S. Trustee Fees, together with any interest thereon, calculated against the cash distributions under the Plan and disbursements made during the Chapter 11 Case.  The U.S. Trustee fees shall be paid until the Chapter 11 Case is closed by entry of a final decree.

## ARTICLE III

## CLASSIFICATION AND TREATMENT OF CLAIMS

The Plan classifies Claims and Interests against the Debtor consistent with the applicable provisions of the Bankruptcy Code.  All Claims and Interests are deemed impaired because the final sale price of the Building is not yet known.

3.1     **Summary**.  The categories listed below classify Claims and Interests against the Debtor for all purposes, including voting, confirmation and distribution pursuant to sections 1122 and 1123(a)(l) of the Bankruptcy Code, as summarized below:

| Class | Designation | Impaired | Entitled to Vote |
|-------|-------------|----------|------------------|
| Class 1 | Allowed Secured Claim of Chase | Yes | Yes |
| Class 2 | Allowed Secured Claim of W Financial | Yes | Yes |
| Class 3 | Allowed General Unsecured Claims including any claims of contractors, service providers, vendors, and tenants | Yes | Yes |
| Class 4 | Equity Interests | Yes | Yes |

3.2     **Class 1: The Allowed Secured Claim of the Senior Lender**

**Classification** – Class 1 consists of the Allowed Secured Claim of Chase.  The Debtor submits that Chase's pre-petition Allowed claim is the amount of the foreclosure judgment

($40,906,865.06) plus statutory interest thereon from the entry of the judgment on October 27, 2025 through the December 16, 2025 Petition Date at nine (9%) percent per annum (for total interest of $504,331.21), or $41,411,196.27. It is Chase's position that the Debtor has misread the foreclosure judgment, which states: (i) that the $40,906,865.06 figure was based upon the total amount Chase was owed as of August 1, 2025 (the Referee's calculation date), and that Chase was entitled to interest from and after August 1, 2025; and (ii) Chase was additionally awarded $325,000.00 in legal fees. It is Chase's position that Chase is thus owed the total sum of at least $42,858,225.25 as of the Petition Date, and that Chase may be entitled to applicable post-petition fees and expenses (including, without limitation, attorneys' fees) pursuant to section 506 of the Bankruptcy Code. If the parties cannot agree consensually on an Allowed amount, the Bankruptcy Court will fix and determine the disputed portion of the Class 1 Allowed Secured Claim following the Debtor's filing of a limited claim objection and notice and a hearing thereon. If Chase is deemed oversecured, its Allowed Secured Claim shall also include post-petition interest at the applicable default contract rate under section 506(b) of the Bankruptcy Code, reasonable legal fees, and any other fees, costs, or charges payable in accordance with section 506(b) of the Bankruptcy Code.

**Treatment** – After payment of Allowed Unclassified Claims, Chase shall receive the first net cash from the Sale Proceeds on the Effective Date of the Plan, up to the full amount of Chase's Allowed Secured Claim if the Building is sold to a third-party. Conversely, if Chase is ultimately deemed the Successful Purchaser, then on the Effective Date, Chase, or its designee, shall receive a deed to the Building together with all other Property Transfer Instruments to convey ownership of the Building, free and clear of all Claims, liens and interests pursuant to sections 363(b) and (f)

9

of the Bankruptcy Code.  For the avoidance of doubt, Chase is permitted to credit bid an amount less than the full amount of its Allowed Secured Claim.[1]

**Voting** – Chase is potentially impaired under the Plan because the final Sale price for the Building is not yet known and, therefore, Chase is eligible to vote on the Plan.

### 3.3    **Class 2: The Allowed Secured Claim of W Financial**

**Classification** – Class 2 consists of the Allowed Secured Claim of W Financial in the principal sum of $5 million, plus allowed accrued interest, secured by subordinate mortgages encumbering the Building.

**Treatment** – W Financial is party to the Intercreditor Agreement with Chase. Accordingly, W Financial shall receive the residual Sale Proceeds on the Effective Date (after payment of Chase's Claim in full in cash) up to the full amount of W Financial's Allowed Secured Claim.

As a secured creditor, W Financial also retains Credit Bid Rights, provided, however, that W Financial's credit bid must include a sufficient cash component to satisfy Chase's Class 1 Claim in full in cash and pay the Unclassified Claims as set forth above.  Should W Financial make such a credit bid and is then deemed to be the Successful Purchaser by the Bankruptcy Court, W Financial or its designee, on the Effective Date shall receive a deed together with all other Property Transfer Instruments to convey ownership of the Building free and clear of all Claims, liens and interests pursuant to sections 363(b) and (f) of the Bankruptcy Code.

**Voting** – W Financial is potentially impaired under the Plan because the final Sale price is not yet known and, therefore, W Financial is eligible to vote on the Plan.

---

[1] In discussing Chase's potential credit bid, the term "Chase" includes any Chase-related entity to which Chase may assign its claim or credit bid for purposes of taking ownership of the Building.

3.4     **Class 3: Unsecured Claims**

**Classification** – Class 3 consists of all Allowed Unsecured Claims against the Debtor.

**Treatment** – The holders of Allowed Class 3 Unsecured Claims shall be paid *pro rata* from the balance of any remaining Sale Proceeds after payment of the Allowed Secured Claims of Chase and W Financial in full in cash.

**Voting** – The Class 3 Claims of Allowed General Unsecured Creditors are impaired and, therefore, are eligible to vote on the Plan.

3.5     **Class 4: Equity Interests**

**Classification** – Class 4 consists of the Equity Interests in the Debtor.

**Treatment** – On the Effective Date, the Equity Interests of West 125th shall be cancelled, released and extinguished in connection with the winding up of the Debtor's sale under the most beneficial tax structure; provided, that holders of the Equity Interests shall be eligible to receive any surplus funds generated from the sale of the Building after payment of Unclassified Claims and the Allowed Claims of Classes 1, 2 and 3 in full in cash.

**Voting** – Class 4 Equity Interests are impaired under the Plan and, therefore, are eligible to vote on the Plan.

## ARTICLE IV

## MEANS FOR IMPLEMENTATION OF THE PLAN

4.1     **Sale of Building**.  The primary means to implement and fund the Plan is through the completion of the auction process and a closing on the Sale of the Building to the Successful Purchaser as approved by the Bankruptcy Court.  The Sale Proceeds shall be collected by the Disbursing Agent at Closing and used to pay the holders of Allowed Claims in accordance with the terms and provisions of this Plan.

11

    4.2    **Provisions Relating to the Sale Process**.

    (a)    **Free and Clear Sale**.  The sale and transfer of the Building to the Successful Purchaser shall be made pursuant to the Confirmation Order, free and clear of all Claims, liens and interests pursuant to section 1123(a)(5) of the Bankruptcy Code.

    (b)    **Good Faith Purchaser**.  The Sale of the Building to the Successful Purchaser shall be undertaken by the Debtor at arm's-length and in good faith within the meaning of the Bankruptcy Code.  As a result of the foregoing, the Debtor shall seek to have the Successful Purchaser designated as a good faith purchaser under section 363(m) of the Bankruptcy Code.

    (c)    **Closing under the Confirmation Order**.  The Building shall remain in the Debtor's estate until the Closing, whereupon it shall be transferred and conveyed to the Successful Purchaser.  The Confirmation Order shall contain appropriate provisions authorizing and directing the Debtor to sell the Building and execute and deliver the deed and all Property Transfer Instruments at the Closing of the Sale.

    4.3    **Exemption from Transfer Taxes**.  Pursuant to section 1146(a) of the Bankruptcy Code, the Sale of the Building to the Successful Purchaser shall be done pursuant to or in connection with the Plan.  Thus, consistent with the provisions of section 1146(a) of the Bankruptcy Code, the Sale shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, sale or use tax, mortgage recording tax, or other similar tax or governmental assessment, including, without limitation any New York City (RPT) and New York State (TP 584) taxes (any such tax, a "**Transfer Tax**").  Upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any Transfer Taxes and accept for filing and recordation the Property Transfer Instruments, the Confirmation Order, the Plan, and any Plan Supplement without the payment of any Transfer Tax.

## ARTICLE V

## DISTRIBUTIONS

5.1     **Method of Payment**.  All post-petition payments to be made pursuant to the Plan shall be made by check drawn on the Disbursing Agent's escrow or IOLA account and mailed to a particular creditor's last known address; *provided*, that, if there are Sale Proceeds, distributions to Chase on account of its Class 1 Allowed Secured Claim from shall be paid in cash from such Sale Proceeds at the closing of the Sale.

5.2     **Disbursing Agent**.  The Disbursing Agent shall act on behalf of the Debtor's estate on and after the Effective Date.  The Disbursing Agent shall not be required to post any bond, surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.  The Disbursing Agent shall not incur any liability, other than for gross negligence, willful misconduct, criminal conduct, or for any claim for liability pursuant to 28 U.S.C. § 959 in connection with carrying out its duties under the Plan, which liability shall be expressly limited to the period commencing from the Disbursing Agent's receipt of the residual Sale Proceeds.  The Disbursing Agent shall **not** be deemed to be an officer, fiduciary or agent of the Debtor.

5.3     **Prosecution of Claim Objections**.  The Debtor or the Disbursing Agent shall each have the right to file, settle, compromise, withdraw or litigate, to final order or judgment, objections to Claims, which objections shall be served and filed on or before the Claim Objection Deadline.  Once an objection is filed, the particular claim is deemed a Disputed Claim (in whole or in part).  The cash reserved in the Disputed Claim Reserve for the holder of such Disputed Claim shall be distributed only after such Disputed Claim becomes an Allowed Claim.  The holder of

such Claim shall not be entitled to any additional interest on the Allowed Claim, regardless of when distribution takes place.

ARTICLE VI

TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.1     **Assumption and Assignment of Executory Contracts and Unexpired Leases**. On the Effective Date, except as otherwise provided herein or in any contract, instrument, release, or other agreement or document entered into in connection with the Plan, the Plan shall serve as a motion under sections 365 and 1123(b)(2) of the Bankruptcy Code to assume, assume and assign, or reject Executory Contracts and Unexpired Leases, and each Executory Contract and Unexpired Lease not previously rejected, assumed, or assumed and assigned shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date without the need for any further notice to or action, order, or approval of the Bankruptcy Court, unless such Executory Contract or Unexpired Lease: (a) is specifically designated on the Assumption Schedule filed with the Plan Supplement; (b) as of the Effective Date, is subject to a pending motion to assume or reject such Executory Contract or Unexpired Lease Filed by the Debtor on or before the Effective Date; (c) is terminated pursuant to its own terms or by agreement of the parties thereto; or (d) is deemed rejected pursuant to Section 6.5 of the Plan.  Subject to the occurrence of the Effective Date, entry of the Confirmation Order shall constitute an order of the Bankruptcy Court approving the assumptions, assumptions and assignments, or rejections of the Executory Contracts or Unexpired Leases as set forth in the Plan and the Assumption Schedule pursuant to sections 365(a) and 1123 of the Bankruptcy Code and a determination by the Bankruptcy Court that the Successful Purchaser has provided adequate assurance of future performance under such assumed Executory Contracts and Unexpired Leases.

6.2      **Hudson Guild**.  In addition to the foregoing, the rights, claims and obligations of the Debtor and Hudson Guild with respect to Hudson's Guild's Lease Agreement dated February 4, 2025, between the Debtor and Hudson Guild, are and remain subject to the parties' stipulation referenced above [ECF No. 43].

6.3      **Assumption Cure Payments**.  Except as otherwise agreed to by the Successful Purchaser and the applicable counterparty, on the Effective Date, any Cure Claims shall be satisfied for the purposes of section 365(b)(1) of the Bankruptcy Code by payment in cash by the Debtor or Successful Purchaser, as applicable, on the Effective Date or as soon as reasonably practicable thereafter, of the cure amount set forth on the Assumption Schedule for the applicable Executory Contract or Unexpired Lease.  The Debtor projects that the total cure claims that remain owing to commercial tenants aggregate $328,566.82[2] if all leases are assumed.  Notice of potential cure costs [ECF No. 73] has previously been provided to the tenants on March 19, 2026 pursuant to Order of the Bankruptcy Court [ECF No. 68].  Any Cure Claim shall be deemed fully satisfied, released, and discharged upon the payment of the Cure Claim.  The Debtor, in consultation with Chase, may settle any Cure Claim without any further notice to or action, order, or approval of the Bankruptcy Court.  Any party that fails to object to the applicable cure amount listed on the Cure Notice by April 8, 2026 shall be forever barred, estopped, and enjoined from disputing the cure amount set forth on such Cure Notice (including a cure amount of $0.00) and/or from asserting any Claim against the Debtor or the Successful Purchaser arising under section 365(b)(1) of the Bankruptcy Code.  On or before the Effective Date, the payment of Cure Claims relating to tenant security deposits shall occur by depositing the applicable amount into an account to be held in trust

---

[2] Hudson Guild's Cure Claim arising from its security deposit was resolved and cured as a result of its stipulation with the Debtor [ECF No. 43].

on behalf of the applicable tenant in accordance with the terms of the applicable lease and applicable state law.

6.4    **Dispute Resolution**.  In the event of a timely filed objection regarding (a) the amount of any Cure Claim; (b) the ability of the Successful Purchaser to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under an Executory Contract or Unexpired Lease to be assumed; or (c) any other matter pertaining to assumption or the cure of defaults required by section 365(b)(1) of the Bankruptcy Code (an "**Assumption Dispute**"), such dispute shall be resolved by a Final Order of the Bankruptcy Court (which may be the Confirmation Order) or as may be agreed upon by the Debtor and the applicable counterparty to the Executory Contract or Unexpired Lease without any further notice to any party or any action, order, or approval of the Bankruptcy Court.  To the extent an Assumption Dispute relates solely to the amount of a Cure Claim, the Debtor may assume and/or assume and assign the applicable Executory Contract or Unexpired Lease prior to the resolution of such Assumption Dispute subject to the funding of the Disputed Claim Reserve, subject to the applicable sale and purchase agreement.  For the avoidance of doubt, if the Debtor is unable to resolve an Assumption Dispute relating solely to the amount of a Cure Claim prior to the Confirmation Hearing, such Assumption Dispute may be scheduled to be heard by the Bankruptcy Court after the Confirmation Hearing (an "**Adjourned Cure Dispute**"); provided, that the Debtor, with the consent of the Successful Purchaser, may settle any Adjourned Cure Dispute with the applicable counterparty after the Effective Date without further notice to any party or any action, order, or approval of the Bankruptcy Court.

6.5    **Rejection of Insider Leases**.  Notwithstanding anything to the contrary herein, unless the Successful Purchaser agrees in writing to the contrary, on the Effective Date, any

Executory Contract or Unexpired Lease of the Debtor where the counterparty is an Insider shall be deemed rejected as of the Effective Date pursuant to section 365 of the Bankruptcy Code.  With respect to any Unexpired Leases, each such Insider shall vacate the Building on or before the Effective Date and shall cooperate with the Debtor and the Successful Purchaser in the orderly turnover of the premises, including, without limitation, surrendering all keys, access cards, security codes, records, and other property of the Debtor relating to the Building.

6.6   **Rejection Damages Claims**.  Any party holding a Rejection Damages Claim is required to file a Proof of Claim by the Rejection Damages Claim Bar Date.  Any such Rejection Damages Claim not filed by the Rejection Damages Claim Bar Date shall be disallowed pursuant to the Confirmation Order, forever barred from assertion, and shall not be enforceable against the Debtor, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Debtor's schedules or a Proof of Claim to the contrary.  Rejection Damages Claims shall be classified as Class 3 Claims and may be objected to pursuant to Section 5.3 herein.

6.7   **Nonoccurrence of the Effective Date**.  In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

6.8   **Reservation of Rights**.  Neither the inclusion of any Executory Contract or Unexpired Lease on the Debtor's schedules or the Assumption Schedule, nor anything contained in the Plan, shall constitute an admission by the Debtor that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Debtor has any liability thereunder.

**ARTICLE VII**

**CONFIRMATION AND CONSUMMATION OF THE PLAN**

7.1 **Injunction against Interference with the Plan**.   The entry of the Confirmation Order shall forever stay, restrain and permanently enjoin as of the Effective Date: (a) the commencement or continuation of any action to collect, enforce, attach, recover or offset from any property of the Debtor's estate, including the Building sold and transferred under this Plan; or (b) the creation, perfection or enforcement of any lien or encumbrance against the Building sold and transferred under this Plan.  Because this Plan provides for the liquidation of all of the Debtor's assets, the confirmation of the Plan shall not result in a discharge of the Debtor's pre-petition obligations and claims.

7.2 **Release by the Debtor**.  As of the Effective Date, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, to the fullest extent allowed by applicable law, Chase is hereby deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Debtor and its estate, on behalf of itself and any successors, assigns, and representatives, and any and all other entities who may purport to assert any claim or cause of action, directly or derivatively, by, through, for, or because of the foregoing entities, from any and all claims and causes of action, and liabilities whatsoever, including any derivative claims, asserted by or assertable on behalf of the Debtor or its estate, whether known or unknown, foreseen or unforeseen, matured or unmatured, suspected or unsuspected, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, in law (or any applicable rule, statute, regulation, treaty, right, duty or requirement), equity, contract, tort, or otherwise, that the Debtor or its estate, would have been legally entitled to assert in their own right (whether

individually or collectively) or on behalf of the holder of any Claim against, or Interest in, the Debtor (the "**Debtor Release**").

7.3    **Approval of the Debtor Release**.  Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan and, further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (a) in exchange for the good and valuable consideration provided by Chase; (b) a good faith settlement and compromise of the claims or causes of action released by the Debtor Release; (c) in the best interests of the Debtor, its estate, and all holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after reasonable investigation by the Debtor and after due notice and opportunity for hearing; and (f) a bar to the Debtor or its estate, asserting any claim or cause of action released pursuant to the Debtor Release.

7.4    **Conditions to Effective Date**.  The Plan shall not become effective unless and until the following occurs:

(a)    The Confirmation Order shall have been entered providing for its immediate effectiveness and implementation;

(b)    All Insiders shall have vacated the Building in accordance with Section 6.5 herein (unless any Insiders are requested in writing to remain by the Successful Purchaser);

(c)    Any adequate protection payments due and owing to Chase under the Interim Cash Collateral Stipulation (and any subsequent cash collateral stipulations agreed to between the Debtor and Chase) shall have been paid or reserved for in full, as applicable;

(d)    The conditions precedent to the Closing of the Sale of the Building shall have been satisfied or shall be satisfied contemporaneously with the occurrence of the Effective Date; and

(e)    The Cash Collateral Stipulation (and any subsequent cash collateral stipulations agreed to between the Debtor and Chase) shall remain in full

force and effect and shall not have been terminated pursuant to Order of the Bankruptcy Court.

7.5     **Waiver of Conditions Precedent**.  Any of the conditions set forth in Section 7.4 hereof may be waived or modified without further Bankruptcy Court approval with the prior written consent of Chase (email being sufficient).

7.6     **Execution of Documents**.  The Debtor or the Disbursing Agent, as applicable, shall execute, release and deliver all documents reasonably necessary to consummate the transactions contemplated by this Plan.

7.7     **Binding Effect.**  On the Effective Date, the provisions of the Plan shall bind every holder of a Claim against or Interest in the Debtor and inure to the benefit of and be binding on such holder's respective heirs, successors and assigns, regardless of whether the Claim or Interest is impaired under the Plan and whether such holder accepted the Plan.

## ARTICLE VIII

## RETENTION OF JURISDICTION

8.1     **Retention of Jurisdiction**.  After entry of the Confirmation Order, the Bankruptcy Court shall retain jurisdiction over the following matters:

8.1.1    To allow or disallow in whole or in part any objections filed prior to the Claim Objection Deadline, and otherwise allow, disallow, determine, liquidate, classify, estimate, or establish the treatment of any Claim or Interest.

8.1.2    To grant or deny any applications for allowance of final compensation and reimbursement of expenses of Professionals.

8.1.3    To enter a final decree concluding the Chapter 11 Case following the Sale of the Building, payment of Allowed Claims, and resolution of all disputes.

8.1.4   To enter and implement such orders as may be necessary or appropriate to execute, implement, enforce or consummate the provisions of the Plan.

8.2     **Post-Effective Date Jurisdiction**.  Notwithstanding the entry of a final decree or an order closing the Chapter 11 Case, the Bankruptcy Court shall retain jurisdiction to reopen the Chapter 11 Case for the purpose of enforcing the terms of the Plan, the Confirmation Order, and any final decree.

## ARTICLE IX

## GENERAL PROVISIONS

9.1     **Headings**.  The headings in the Plan are for reference purposes only.

9.2     **Contents of Confirmation Order**.  The Confirmation Order shall be in form and substance satisfactory to the Debtor, Chase and the Successful Purchaser, and may contain various provisions deemed necessary to clarify, implement or enforce the Sale of the Building.

9.3     **Orders in Aid of Consummation**.  Pursuant to sections 105, 1141, 1142 and 1143 of the Bankruptcy Code, the Bankruptcy Court may enter one or more orders in aid of Confirmation and/or consummation of the Plan directing the implementation of matters or actions required by the Plan.

9.4     **Compliance with Tax Requirements**.  In connection with the Plan, the Debtor and the Disbursing Agent, as applicable, shall comply with withholding and reporting requirements imposed by federal, state and local taxing authorities, if any, and distributions under the Plan shall be subject to applicable withholding and reporting requirements.  For the avoidance of doubt, the transfer of the Building pursuant to the Confirmation Order shall not be subject to any Transfer Taxes to the fullest extent provided under section 1146 of the Bankruptcy Code.

9.5    **Due Authorization by Creditors**.    Each and every Creditor who elects to participate in the distributions provided for under the Plan warrants that it is the lawful owner of such Claim and is authorized to accept the distributions provided for in the Plan.

9.6    **Amendments and Modifications**.    With the prior written consent of Chase (email being sufficient) the Plan may be amended, modified, or supplemented by the Debtor (a) prior to the entry of the Confirmation Order, and (b) after entry of the Confirmation Order, in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law, in each case, without additional disclosure pursuant to section 1125 of the Bankruptcy Code.    After the entry of the Confirmation Order, so long as such action does not materially and adversely affect the treatment of holders of Allowed Claims pursuant to this Plan, prior to the Effective Date, the Debtor may remedy any defect or omission or reconcile any inconsistencies in this Plan or the Confirmation Order with respect to such matters as may be necessary to carry out the purposes or effects of this Plan, and any holder of a Claim that has voted to accept this Plan shall be deemed to have accepted this Plan as amended, modified, or supplemented.

9.7    **Request for Cramdown Under Section 1129(b)**.    The Debtor may seek confirmation of the Plan under section 1129(b) of the Bankruptcy Code as may be necessary, and subject to establishment of all requisite elements.

9.8    **Successors and Assigns**.    The rights, benefits, and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

9.9    **Governing Law**.    Except to the extent the Bankruptcy Code or Bankruptcy Rules are applicable, the rights, duties, and obligations arising under the Plan shall be governed by, and

construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflict of laws thereof.

9.10   **Severability**.   In the event any provision of the Plan is determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any or all other provisions of the Plan.

9.11   **Quarterly Fees**.  All fees payable pursuant to 28 U.S.C. § 1930, together with any applicable interest thereon, shall be paid by the Debtor until the closing of the Chapter 11 Case.

9.12   **Post-Confirmation Reports**.  Following the Effective Date of the Plan, the Debtor, or the Disbursing Agent shall file with the Bankruptcy Court quarterly post-confirmation status and disbursement reports pending entry of a final decree closing this case, conversion of the case to Chapter 7, or dismissal, whichever happens earlier.

9.13   **Notice of the Effective Date**. The Debtor shall file with the Bankruptcy Court a notice of the occurrence of the Effective Date of the Plan within five (5) Business Days of the occurrence thereof.

9.14    **Closing of the Case**.    In accordance with Local Rule 3022-1, within fourteen (14)

days following the full administration of the Debtor's estate, the Debtor shall file on notice to the

United States Trustee, an application and proposed order for a final decree pursuant to Bankruptcy

Rule 3022, without prejudice to the Bankruptcy Court's ability to reduce or extend the time to file

such application.

Dated:  New York, NY
        April 14, 2026

                                    Goldberg Weprin Finkel Goldstein LLP
                                    Attorneys for the Debtor
                                    125 Park Avenue, 12th Floor
                                    New York, NY 10017

                                    By:    /s/ Kevin J. Nash, Esq.
                                           Kevin J. Nash, Esq.