UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x

In re:                                                     Chapter 11

Mariner's Gate LLC,                                         Case No. 25-12819-PB

                                        Debtor.

-----------------------------------------------------------------x

## DEBTOR'S AMENDED DISCLOSURE STATEMENT[1]

> THIS IS NOT A SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE DEBTOR'S PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT. THIS DISCLOSURE STATEMENT IS BEING SUBMITTED TO THE BANKRUPTCY COURT FOR CONDITIONAL APPROVAL BUT HAS NOT YET BEEN APPROVED.  ACCORDINGLY, THE DISCLOSURE STATEMENT CANNOT BE DISSEMINATED OR RELIED UPON UNLESS AND UNTIL THE SAME HAS ACTUALLY BEEN APPROVED BY ORDER OF THE BANKRUPTCY COURT.

## I.     INTRODUCTION

Mariner's Gate, LLC (the "Debtor") hereby submits this Disclosure Statement pursuant to 11 U.S.C. §1125 (the "Disclosure Statement") to all known holders of Claims against, or Interests in, the Debtor.  The purpose of the Disclosure Statement is to adequately disclose information deemed to be material, important and necessary for creditors and equity holders to make a reasonably informed decision concerning the acceptance or rejection of the accompanying Amended Liquidating Plan of even date filed by the Debtor (the "Plan").  As a creditor or equity holder, your rights may be affected.  Accordingly, you should read the Plan and Disclosure Statement carefully.

---

[1] Capitalized terms used herein and not otherwise defined have the meanings ascribed to them in the *Debtor's Chapter 11 Liquidating Plan*, filed contemporaneously herewith.

## II.    OVERVIEW

The Debtor's major asset consists of the commercial loft office building located at 548 West 28th Street, New York, NY (the "Building"), which is occupied by approximately fifty commercial tenants and has a potential rent roll of approximately $450,000 per month, once a dispute with a new tenant, Hudson Guild Temp Space LLC ("Hudson Guild") is resolved regarding the start of occupancy and the cure of violations.

Prior to bankruptcy, the Debtor became subject to foreclosure proceedings filed by the Debtor's senior lender, JPMorgan Chase Bank, N.A. (as acquirer of certain assets and liabilities of First Republic Bank from the Federal Deposit Insurance Corporation as Receiver) ("Chase"), which obtained a judgment of foreclosure and sale on October 27, 2025 in the sum of $40,906,865.06 (the "Judgment").  Chase alleges, but the Debtor disagrees, that interest on the note under the Judgment is retroactive to August 1, 2025.  Chase also alleges that the Judgment awarded Chase $325,000.00 in legal fees.  Thus, it is Chase's position that it was owed a total of $42,858,225.25 as of the Petition Date.  The Debtor is also obligated to W Financial REIT Ltd. ("W Financial"), which holds a subordinate mortgage in the principal sum of $5,000,000.

The Debtor commenced the Chapter 11 case on December 16, 2025, with a clear strategy to utilize bankruptcy to sell the Building through a competitive marketing process (the "Sale"). Early on, the Debtor believed it had procured a potential stalking horse buyer for the Building, which subsequently exercised a right to terminate the contract.  Notwithstanding the loss of a potential stalking horse buyer, the Debtor still intends to market and sell the Building and has obtained Bankruptcy Court approval of bidding procedures to govern the auction sale pursuant to Order dated on March 18, 2026 [ECF No. 68], as modified by the *Stipulation and Order (I) Modifying Deadlines Under Bid Procedures Order; and (II) Authorizing Further Interim Use of*

*Cash Collateral and Grant of Adequate Protection to JPMorgan Chase Bank N.A.* [ECF No. 94]. Avison Young-New York LLC ("Avison Young") is being retained as the Broker to market the Building.

The current and updated key dates for the sale process are set forth below. On April 1, 2026, the Debtor filed a letter with the Bankruptcy Court [ECF No. 74] requesting a conference to consider extending the deadlines to submit bids and conduct an auction sale. Following the hearing on April 6, 2026, the Debtor filed a formal motion to extend the deadlines. Thereafter, the Debtor came to agreement with Chase on a revised timeline to conduct the auction sale, as set forth below:

| Sale Process Key Dates and Deadlines | |
|---|---|
| Bid Deadline | **May 1, 2026** |
| Auction (if necessary) | **May 5, 2026** |
| Sale Approval Hearing | **May 12, 2026 at 10:00 pm** |
| Plan Confirmation | **No later than May 12, 2026** |
| Closing Date | **No later than June 12, 2026** |

In its simplest terms, the Plan provides the vehicle to pursue and complete the Sale of the Building in bankruptcy and distribute the net sale proceeds to holders of Allowed Claims in accordance with the priorities established under the Bankruptcy Code. Depending on the ultimate sale price, distributions will be made to Unclassified Administrative Expense Claims and Priority Tax Claims, and then to Classified Secured and lastly Unsecured Claims to the extent monies are available from the Sale.

As the senior mortgage lender, Chase stands to receive the first share of the net proceeds up to the full amount of its allowed claim, with potential post-petition interest and legal fees as allowed under 11 U.S.C. Section 506(b). If and when Chase is paid in full, then W Financial

stands to receive the second share of net proceeds up to the allowed amount of its claim. Thereafter, and to the extent residual sale proceeds are available after payment of Unclassified Claims and Allowed Class 1 and Class 2 Claims, the holders of Allowed Class 3 Unsecured Claims shall be paid in whole or in part on a *pro rata* basis.

While the precise distributions to creditors cannot be known until the auction is completed, the Debtor nevertheless believes that the Plan provides the most efficient and cost-effective means of selling the Debtor's Building and distributing the sale proceeds. Accordingly, the Debtor urges all creditors to vote favorably on the Plan.

The Debtor intends to schedule a closing on the Sale of the Building, in accordance with the Plan, after entry of the Confirmation Order so as to qualify for city and state transfer tax exemptions under 11 U.S.C. § 1146(a) under the requirements of the U.S. Supreme Court in *Florida Dept. of Revenue v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33 (2008).

### III.   SIGNIFICANT DEVELOPMENTS IN THE CHAPTER 11 CASE

The Debtor's Chapter 11 case began with fierce disputes with Chase over a number of issues, including the use of cash collateral and Chase's motion seeking the appointment of an operating trustee under 11 U.S.C. §1104 [*See*, ECF Nos. 8 and 17]. The Debtor defended against the two motions filed by Chase [*See*, ECF Nos. 26 and 30]. These motions came on for an evidentiary hearing before the Bankruptcy Court on February 5, 2026. Following the close of the evidence and summations, the Debtor and Chase ultimately came to an agreement concerning the interim use of cash collateral through March 31, 2026 [*See*, ECF No. 37] (the "Interim Cash Collateral Stipulation").

The predicate for the settlement on the interim use of cash collateral was the Debtor's agreement to various milestone dates to conduct the sale of the Building in conjunction with a

4

timeline for confirming the Plan, as set forth above.  The Interim Cash Collateral Stipulation was extended pursuant to a further Stipulation approved on April 10, 2026 to authorize the use of cash collateral through April 30, 2026.  The Trustee Motion has been adjourned to May 12, 2026 at 10:00 a.m.

Also as part of the litigation before the Bankruptcy Court, the Debtor reached a settlement with Hudson Guild to re-establish a security deposit in the sum of $300,000, plus an agreed timeline to cure pending violations so Hudson Guild can commence occupancy of its leased premises.  The stipulation is without prejudice to the Debtor's claims for unpaid rent and Hudson Guild's defenses thereto.  The settlement was approved following a hearing held on March 17, 2026.

On March 19, 2026, the Bankruptcy Court entered the *Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof* [ECF No. 70] (the "Bar Date Order").  Pursuant to the Bar Date Order, the deadline for all persons and entities that assert a claim against the Debtor which arose on or prior to the Petition Date is April 21, 2026, and the deadline for proofs of claim to be filed by governmental units is June 15, 2026.

## IV.    THE CONFIRMATION PROCESS

### A.    The Confirmation Hearing

The Bankruptcy Court has entered an Order (the "Scheduling Order") conditionally approving the Disclosure Statement as containing adequate information within the meaning of 11 U.S.C. §1125 necessary for creditors to (i) evaluate the Plan; and (ii) determine whether to object to confirmation of the Plan and scheduling a combined hearing to consider both final approval of the Disclosure Statement and confirmation of the Plan on May 12, 2026 at 10:00 a.m., prevailing New York Time (the "Confirmation Hearing").

A copy of the Plan and Disclosure Statement will be attached or accompany the Scheduling Order.  Upon entry of the Scheduling Order creditors are advised to review the dates and deadlines contained therein for voting and the filing of objections, if any.

The Confirmation Hearing will be conducted in person or through Zoom for Government videoconference.  Parties wishing to participate in the Confirmation Hearing are required to register their eCourt Appearance by 4:00 p.m. (New York Time) the day before the Confirmation Hearing at https://nysb-ecf.sso.dcn/cgi-bin/nysbAppearances.pl.

At the Confirmation Hearing, the Bankruptcy Court shall determine whether the requirements of section 1129(a) or (b) of the Bankruptcy Code have been satisfied in order to obtain confirmation and approval of the Plan.  Any objection to final approval of the Disclosure Statement or confirmation of the Plan must be in writing, filed with the Bankruptcy Court no later than May 6, 2026 and served on the parties listed in the Scheduling Order.

**B.      Voting**

In order for the Plan to be accepted on a fully consensual basis, each impaired class of Claims must accept the Plan.  For purposes of the Plan, the respective holders of the Class 1 Secured Claim of Chase, the Class 2 Secured Claim of W Financial, the Class 3 Unsecured Claims, and Class 4 Equity Interests are or may be impaired and eligible to vote on the Plan.  A ballot is being provided to creditors and interest holders in those classes, which should be completed and returned before the voting deadline by either overnight mail or email to Goldberg Weprin Finkel Goldstein LLP, Attn: Kevin J. Nash, 125 Park Avenue, 12th Floor, New York, New York 10017.  E-mail: KNash@GWFGlaw.com.  In order to be considered, a ballot must be actually received on or before May 6, 2026 at 5:00 p.m. (prevailing New York time) (the "Voting Deadline").

## V.    SUMMARY OF THE TREATMENT OF CLAIMS AND INTERESTS

The table below briefly summarizes the specific classification and treatment of pre-petition

Claims and Interests under the Plan:

| Class | Designation | Impaired | Entitled to Vote |
|-------|-------------|----------|------------------|
| Class 1 | Allowed Secured Claim of Chase | Yes | Yes |
| Class 2 | Allowed Secured Claim of W Financial | Yes | Yes |
| Class 3 | Allowed General Unsecured Claims including any claims of contractors, service providers, vendors, and tenants | Yes | Yes |
| Class 4 | Equity Interests | Yes | Yes |

As opposed to impaired Claims, U.S. Trustee Fees, and Administrative Expense Claims,

including Professional Fee Claims and Priority Tax Claims, have not been classified as permitted

by Section 1123(a)(1) of the Bankruptcy Code and shall be paid in full as a requirement of

confirmation (unless the holders of such claims agree to a different treatment). These unclassified

claims shall be paid in accordance with the priority structure and requirements of the Bankruptcy

Code without any need or opportunity to vote.

## VI.    SUMMARY OF THE PLAN OF REORGANIZATION

## A.    UNCLASSIFIED CLAIMS

Pursuant to section 1123(a) of the Bankruptcy Code, the Plan does not classify

Administrative Expense Claims, Priority Tax Claims, or U.S. Trustee Fees, all of which, to the

extent Allowed, shall be paid in full in cash as required by section 1129(a)(9) of the Bankruptcy

Code by the later of (i) the Effective Date, or (ii) the date on which such Claim becomes an

Allowed Claim.

**Administrative Expense Claims.** Administrative Expense Claims consist of the

necessary and actual costs and expenses of maintaining, preserving, and selling the Building, many

of which shall be paid in the ordinary course of the Debtor's post-petition business pursuant to the

7

Cash Collateral Stipulation. Besides operating expenses, Administrative Expense Claims include (i) Allowed Professional Fees of the Debtor's counsel, Goldberg Weprin Finkel Goldstein LLP ("GWFG") as approved by Order of the Bankruptcy Court, and any allowed Broker's commission of Avison Young likewise as approved by the Bankruptcy Court. GWFG has agreed to cap its legal fees in the reduced amount of $175,000 (net of the unused retainer) plus reasonable, documented expenses. All requests for payment of Administrative Expense Claims must be filed by no later than the Administrative Claims Bar Date.

**Professional Fees**. All Professionals shall file a final application for services rendered no later than thirty (30) days after the Effective Date. The Allowed Professional Fee Claims shall be paid by the Debtor or Disbursing Agent, as applicable, following Bankruptcy Court approval upon notice and a hearing.

**Priority Tax Claims.** Any unpaid real estate taxes, assessments, or water charges that may be due and owing with respect to the Building prior to the Effective Date shall be treated as Priority Tax Claims and shall be paid by the Debtor on the Effective Date. The Debtor is current on its real estate taxes through June 30, 2026.

**U.S. Trustee Fees.** On the Effective Date, the Debtor shall pay all outstanding U.S. Trustee Fees, together with any interest thereon, calculated against the cash distributions under the Plan and disbursements made during the Chapter 11 Case. The U.S. Trustee fees shall be paid until the Chapter 11 Case is closed by entry of a final decree.

B.    **CLASSIFIED CLAIMS**

The Plan classifies Claims and Interests against the Debtor consistent with the applicable provisions of the Bankruptcy Code for all purposes, including voting, confirmation and

8

distribution pursuant to sections 1122 and 1123(a)(l) of the Bankruptcy Code. All Claims and Interests are deemed impaired because the final sale price of the Building is not yet known.

**Class 1: The Allowed Secured Claim of the Senior Lender**

**Classification** – Class 1 consists of the Allowed Secured Claim of Chase. The Debtor submits that Chase's pre-petition Allowed claim is the amount of the foreclosure judgment ($40,906,865.06) plus statutory interest thereon from the entry of the judgment on October 27, 2025 through the December 16, 2025 Petition Date at nine (9%) percent per annum (for total interest of $504,331.21), or $41,411,196.27. It is Chase's position that the Debtor has misread the foreclosure judgment, which states: (i) that the $40,906,865.06 figure was based upon the total amount Chase was owed as of August 1, 2025 (the Referee's calculation date), and that Chase was entitled to interest from and after August 1, 2025; and (ii) Chase was additionally awarded $325,000.00 in legal fees. It is Chase's position that Chase is thus owed the total sum of at least $42,858,225.25 as of the Petition Date, and that Chase may be entitled to applicable post-petition fees and expenses (including, without limitation, attorneys' fees) pursuant to section 506 of the Bankruptcy Code. If the parties cannot agree consensually on an Allowed amount, the Bankruptcy Court will fix and determine the disputed portion of the Class 1 Allowed Secured Claim following the Debtor's filing of a limited claim objection and notice and a hearing thereon. If Chase is deemed oversecured, its Allowed Secured Claim shall also include post-petition interest at the applicable default contract rate under section 506(b) of the Bankruptcy Code, reasonable legal fees, and any other fees, costs, or charges payable in accordance with section 506(b) of the Bankruptcy Code.

**Treatment** – After payment of Allowed Unclassified Claims, Chase shall receive the first net cash from the Sale Proceeds on the Effective Date of the Plan, up to the full amount of Chase's

Allowed Secured Claim if the Building is sold to a third-party. Conversely, if Chase is ultimately deemed the Successful Purchaser, then on the Effective Date, Chase, or its designee, shall receive a deed to the Property together with all other Property Transfer Instruments to convey ownership of the Building, free and clear of all Claims, liens and interests pursuant to sections 363(b) and (f) of the Bankruptcy Code. For the avoidance of doubt, Chase is permitted to credit bid an amount less than the full amount of its Allowed Secured Claim.[2]

**Voting** – Chase is potentially impaired under the Plan because the final Sale price for the Building is not yet known and, therefore, Chase is eligible to vote on the Plan.

**Class 2: The Allowed Secured Claim of W Financial**

**Classification** – Class 2 consists of the Allowed Secured Claim of W Financial in the principal sum of $5 million, plus allowed accrued interest, secured by subordinate mortgages encumbering the Building.

**Treatment** – W Financial is party to the Intercreditor Agreement with Chase. Accordingly, W Financial shall receive the residual Sale Proceeds on the Effective Date (after payment of standard closing costs under the applicable sale and purchase agreement, Unclassified Claims and Chase's Claim in full in cash) up to the full amount of W Financial's Allowed Secured Claim.

As a secured creditor, W Financial also retains Credit Bid Rights, provided, however, that W Financial's credit bid must include a sufficient cash component to satisfy Chase's Class 1 Claim in full in cash and pay the Unclassified Claims as set forth above. Should W Financial make such a credit bid and is then deemed to be the Successful Purchaser by the Bankruptcy Court, W

---

[2] In discussing Chase's potential credit bid, the term "Chase" includes any Chase-related entity to which Chase may assign its claim or credit bid for purposes of taking ownership of the Building.

Financial or its designee, on the Effective Date shall receive a deed together with all other Property Transfer Instruments to convey ownership of the Building free and clear of all Claims, liens and interests pursuant to sections 363(b) and (f) of the Bankruptcy Code.

**Voting** – W Financial is potentially impaired under the Plan because the final Sale price is not yet known and, therefore, W Financial is eligible to vote on the Plan.

### Class 3: Unsecured Claims

**Classification** – Class 3 consists of all Allowed Unsecured Claims against the Debtor.

**Treatment** – The holders of Allowed Class 3 Unsecured Claims shall be paid *pro rata* from the balance of any remaining Sale Proceeds after payment of standard closing costs under the applicable sale and purchase agreement, Unclassified Claims and the Allowed Secured Claims of Chase and W Financial in full in cash.

**Voting** – The Class 3 Claims of Allowed General Unsecured Creditors are impaired and, therefore, are eligible to vote on the Plan.

### Class 4: Equity Interests

**Classification** – Class 4 consists of the Equity Interests in the Debtor.

**Treatment** – On the Effective Date, the Equity Interests of West 125th shall be cancelled, released and extinguished in connection with the winding up of the Debtor's sale under the most beneficial tax structure; provided, that holders of the Equity Interests shall be eligible to receive any surplus funds generated from the sale of the Building after payment of Unclassified Claims and the Allowed Claims of Classes 1, 2 and 3 in full in cash.

**Voting** – Class 4 Equity Interests are impaired under the Plan and, therefore, are eligible to vote on the Plan.

## C.   MEANS FOR IMPLEMENTATION OF THE PLAN

**Sale of Building.**  The primary means to implement and fund the Plan is through the completion of the auction process and a closing on the Sale of the Building to the Successful Purchaser as approved by the Bankruptcy Court.  The Sale Proceeds shall be collected by the Disbursing Agent at Closing and used to pay the holders of Allowed Claims in accordance with the terms and provisions of the Plan.

**Provisions Relating to the Sale Process.**

(a)   **Free and Clear Sale**.  The sale and transfer of the Building to the Successful Purchaser shall be made pursuant to the Confirmation Order, free and clear of all Claims, liens and interests pursuant to section 1123(a)(5) of the Bankruptcy Code.

(b)   **Good Faith Purchaser**.  The Sale of the Building to the Successful Purchaser shall be undertaken by the Debtor at arm's-length and in good faith within the meaning of the Bankruptcy Code.  As a result of the foregoing, the Debtor shall seek to have the Successful Purchaser designated as a good faith purchaser under section 363(m) of the Bankruptcy Code.

(c)   **Closing under the Confirmation Order**.  The Building shall remain in the Debtor's estate until the Closing, whereupon it shall be transferred and conveyed to the Successful Purchaser.  The Confirmation Order shall contain appropriate provisions authorizing and directing the Debtor to sell the Building and execute and deliver the deed and all Property Transfer Instruments at the Closing of the Sale.

**Exemption from Transfer Taxes.**  Pursuant to section 1146(a) of the Bankruptcy Code, the Sale of the Building to the Successful Purchaser shall be done pursuant to or in connection with the Plan.  Thus, consistent with the provisions of section 1146(a) of the Bankruptcy Code, the Sale shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, sale or use tax, mortgage recording tax, or other similar tax or governmental assessment, including, without limitation any New York City (RPT) and New York State (TP 584) taxes (any such tax, a "Transfer Tax").  Upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any Transfer Taxes and accept for filing and

12

recordation the Property Transfer Instruments, the Confirmation Order, the Plan, and any Plan Supplement without the payment of any Transfer Tax.

**D.**    **TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**Assumption and Assignment of Executory Contracts and Unexpired Leases.**  On the Effective Date, except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document entered into in connection with the Plan, the Plan shall serve as a motion under sections 365 and 1123(b)(2) of the Bankruptcy Code to assume, assume and assign, or reject Executory Contracts and Unexpired Leases, and each Executory Contract and Unexpired Lease not previously rejected, assumed, or assumed and assigned shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date without the need for any further notice to or action, order, or approval of the Bankruptcy Court, unless such Executory Contract or Unexpired Lease: (a) is specifically designated on the Assumption Schedule filed with the Plan Supplement; (b) as of the Effective Date, is subject to a pending motion to assume or reject such Executory Contract or Unexpired Lease filed by the Debtor on or before the Effective Date; (c) is terminated pursuant to its own terms or by agreement of the parties thereto; or (d) is deemed rejected pursuant to Section 6.5 of the Plan.  Subject to the occurrence of the Effective Date, entry of the Confirmation Order shall constitute an order of the Bankruptcy Court approving the assumptions, assumptions and assignments, or rejections of the Executory Contracts or Unexpired Leases as set forth in the Plan and the Assumption Schedule pursuant to sections 365(a) and 1123 of the Bankruptcy Code and a determination by the Bankruptcy Court that the Successful Purchaser has provided adequate assurance of future performance under such assumed Executory Contracts and Unexpired Leases.

**Hudson Guild.**  In addition to the foregoing, the rights, claims and obligations of the Debtor and Hudson Guild with respect to Hudson's Guild's Lease Agreement dated February 4,

13

2025, between the Debtor and Hudson Guild, are and remain subject to the parties' stipulation referenced above [ECF No. 43].

**Assumption Cure Payments.**  Except as otherwise agreed to by the Successful Purchaser and the applicable counterparty, on the Effective Date, any Cure Claims shall be satisfied for the purposes of section 365(b)(1) of the Bankruptcy Code by payment in cash, on the Effective Date or as soon as reasonably practicable thereafter, of the cure amount set forth on the Assumption Schedule for the applicable Executory Contract or Unexpired Lease.  The Debtor projects that the total cure claims that remain owing to commercial tenants aggregate \$328,566.82[3] if all leases are assumed. Notice of potential cure costs [ECF No. 73] has previously been provided to the tenants on March 19, 2026 pursuant to Order of the Bankruptcy Court [ECF No. 68].  To date, only Hudson Guild filed a reservation of rights and no other tenants filed an objection.  On or before the Effective Date, the payment of Cure Claims relating to tenant security shall occur by depositing the applicable amount into an account to be held in trust on behalf of the applicable tenant in accordance with the terms of the applicable lease and applicable state law.

Any Cure Claim shall be deemed fully satisfied, released, and discharged upon the payment of the Cure Claim.  The Debtor, in consultation with Chase, may settle any Cure Claim without any further notice to or action, order, or approval of the Bankruptcy Court.  Any party that failed to object to the applicable cure amount listed on the Cure Notice by April 8, 2026 shall be forever barred, estopped, and enjoined from disputing the cure amount set forth on such Cure Notice (including a cure amount of \$0.00) and/or from asserting any Claim against the Debtor arising under section 365(b)(1) of the Bankruptcy Code.

---

[3] Hudson Guild's Cure Claim arising from its security deposit was resolved and cured as a result of its stipulation with the Debtor [ECF No. 43].

**Dispute Resolution.**  In the event of a timely filed objection regarding (a) the amount of any Cure Claim; (b) the ability of the Successful Purchaser to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under an Executory Contract or Unexpired Lease to be assumed; or (c) any other matter pertaining to assumption or the cure of defaults required by section 365(b)(1) of the Bankruptcy Code (an "Assumption Dispute"), such dispute shall be resolved by a Final Order of the Bankruptcy Court (which may be the Confirmation Order) or as may be agreed upon by the Debtor, with the consent of the Successful Purchaser, and the applicable counterparty to the Executory Contract or Unexpired Lease without any further notice to any party or any action, order, or approval of the Bankruptcy Court.  To the extent an Assumption Dispute relates solely to the amount of a Cure Claim, the Debtor may assume and/or assume and assign the applicable Executory Contract or Unexpired Lease prior to the resolution of such Assumption Dispute subject to the funding of the Disputed Claim Reserve, subject to the applicable sale and purchase agreement.  For the avoidance of doubt, if the Debtor is unable to resolve an Assumption Dispute relating solely to the amount of a Cure Claim prior to the Confirmation Hearing, such Assumption Dispute may be scheduled to be heard by the Bankruptcy Court after the Confirmation Hearing (an "Adjourned Cure Dispute"); provided, that the Debtor may settle any Adjourned Cure Dispute with the applicable counterparty after the Effective Date without further notice to any party or any action, order, or approval of the Bankruptcy Court.

**Rejection of Insider Leases.**  Notwithstanding anything to the contrary herein or in the Plan, unless the Successful Purchaser agrees to the contrary, on the Effective Date, any Executory Contract or Unexpired Lease of the Debtor where the counterparty is an Insider shall be deemed rejected as of the Effective Date pursuant to section 365 of the Bankruptcy Code.  With respect to

15

any Unexpired Leases, each such Insider shall vacate the Building on or before the Effective Date and shall cooperate with the Debtor and the Successful Purchaser in the orderly turnover of the premises, including, without limitation, surrendering all keys, access cards, security codes, records, and other property of the Debtor relating to the Building.

**Rejection Damages Claims.**  Any party holding a Rejection Damages Claim is required to file a Proof of Claim by the Rejection Damages Claim Bar Date.  Any such Rejection Damages Claim not filed by the Rejection Damages Claim Bar Date shall be disallowed pursuant to the Confirmation Order, forever barred from assertion, and shall not be enforceable against the Debtor, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Debtor's schedules or a Proof of Claim to the contrary.  Rejection Damages Claims shall be classified as Class 3 Claims and may be objected to pursuant to Section 5.2 of the Plan.

**Nonoccurrence of the Effective Date.**  In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

**Reservation of Rights.**  Neither the inclusion of any Executory Contract or Unexpired Lease on the Debtor's schedules or the Assumption Schedule, nor anything contained in the Plan, shall constitute an admission by the Debtor that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Debtor has any liability thereunder.

E.      **CONFIRMATION AND CONSUMMATION OF THE PLAN**

**Injunction against Interference with the Plan.**      The entry of the Confirmation Order shall forever stay, restrain and permanently enjoin as of the Effective Date: (a) the commencement or continuation of any action to collect, enforce, attach, recover or offset from any property of the

Debtor's estate, including the Building sold and transferred under the Plan; or (b) the creation, perfection or enforcement of any lien or encumbrance against the Building sold and transferred under the Plan. Because the Plan provides for the liquidation of all of the Debtor's assets, the confirmation of the Plan shall not result in a discharge of the Debtor's pre-petition obligations and claims.

**Release by the Debtor.** As of the Effective Date, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, to the fullest extent allowed by applicable law, Chase is hereby deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Debtor and its estate, on behalf of itself and any successors, assigns, and representatives, and any and all other entities who may purport to assert any claim or cause of action, directly or derivatively, by, through, for, or because of the foregoing entities, from any and all claims and causes of action, and liabilities whatsoever, including any derivative claims, asserted by or assertable on behalf of the Debtor or its estate, whether known or unknown, foreseen or unforeseen, matured or unmatured, suspected or unsuspected, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, in law (or any applicable rule, statute, regulation, treaty, right, duty or requirement), equity, contract, tort, or otherwise, that the Debtor or its estate, would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim against, or Interest in, the Debtor (the "Debtor Release").

**Approval of the Debtor Release.** Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan and, further, shall constitute the

Bankruptcy Court's finding that the Debtor Release is: (a) in exchange for the good and valuable consideration provided by Chase; (b) a good faith settlement and compromise of the claims or causes of action released by the Debtor Release; (c) in the best interests of the Debtor, its estate, and all holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after reasonable investigation by the Debtor and after due notice and opportunity for hearing; and (f) a bar to the Debtor or its estate, asserting any claim or cause of action released pursuant to the Debtor Release.

**Conditions to Effective Date.** The Plan shall not become effective unless and until the following occurs:

(a)     The Confirmation Order shall have been entered providing for its immediate effectiveness and implementation;

(b)     All Insiders shall have vacated the Building in accordance with Section 6.5 of the Plan (unless any Insiders are requested in writing to remain by the Successful Purchaser);

(c)     Any adequate protection payments due and owing to Chase under the Interim Cash Collateral Stipulation (and any subsequent cash collateral stipulations agreed to between the Debtor and Chase) shall have been paid or reserved for in full, as applicable;

(d)     The conditions precedent to the Closing of the Sale of the Building shall have been satisfied or shall be satisfied contemporaneously with the occurrence of the Effective Date; and

(e)     The Cash Collateral Stipulation (and any subsequent cash collateral stipulations agreed to between the Debtor and Chase) shall remain in full force and effect and shall not have been terminated pursuant to Order of the Bankruptcy Court.

**Waiver of Conditions Precedent.** Any of the conditions set forth in Section 7.4 of the Plan may be waived or modified without further Bankruptcy Court approval with the prior written consent of Chase (email being sufficient).

18

**Execution of Documents.** The Debtor or the Disbursing Agent, as applicable, shall execute, release and deliver all documents reasonably necessary to consummate the transactions contemplated by the Plan.

**Binding Effect.** On the Effective Date, the provisions of the Plan shall bind every holder of a Claim against or Interest in the Debtor and inure to the benefit of and be binding on such holder's respective heirs, successors and assigns, regardless of whether the Claim or Interest is impaired under the Plan and whether such holder accepted the Plan.

F.     **RETENTION OF JURISDICTION**

**Retention of Jurisdiction**. After entry of the Confirmation Order, the Bankruptcy Court shall retain jurisdiction over the following matters: (i) To allow or disallow in whole or in part any objections filed prior to the Claim Objection Deadline, and otherwise allow, disallow, determine, liquidate, classify, estimate, or establish the treatment of any Claim or Interest; (ii) To grant or deny any applications for allowance of final compensation and reimbursement of expenses of Professionals; (iii) To enter a final decree concluding the Chapter 11 Case following the Sale of the Building, payment of Allowed Claims, and resolution of all disputes; and (iv) To enter and implement such orders as may be necessary or appropriate to execute, implement, enforce or consummate the provisions of the Plan.

**Post-Effective Date Jurisdiction.** Notwithstanding the entry of a final decree or an order closing the Chapter 11 Case, the Bankruptcy Court shall retain jurisdiction to reopen the Chapter 11 Case for the purpose of enforcing the terms of the Plan, the Confirmation Order, and any final decree.

## VII.    CONFIRMATION REQUIREMENTS

At the Confirmation Hearing, the Debtor will request that the Bankruptcy Court approve the Disclosure Statement on a final basis and determine that the Plan satisfies the requirements of Section 1129(a) of the Bankruptcy Code, which primarily include the following findings:

(a)    The Plan complies with the applicable provisions of the Bankruptcy Code;

(b)    The Debtor has complied with the applicable provisions of the Bankruptcy Code in promulgating the Plan;

(c)    The Plan has been proposed in good faith and not by any means forbidden by law;

(d)    The Plan is feasible and not likely to be followed by the need for further reorganization based upon a sale of the Property;

(e)    The Plan meets the "best interests" test in that each holder of an Allowed Unsecured Claim will receive a distribution under the Plan on account of such Claim that is not less than the amount that such holder would receive in a Chapter 7 liquidation; and

(f)    The Plan has been accepted by at least one class of impaired creditors.

### A.    Acceptance

A Plan is accepted by an impaired class of Claims if holders of at least two-thirds in dollar amount and a majority in number of Claims of that class vote to accept the Plan.  Only those holders of Claims who actually vote (and are entitled to vote) to accept or reject a Plan count in this tabulation.  The Debtor anticipates meeting the standards for cramdown for any non-accepting classes to the extent any class does vote to accept the Plan.

### B.    Feasibility

The Bankruptcy Code requires that the Debtor establish that it has the monies necessary to fund the Plan and pay creditors on the Effective Date.  Moreover, the Debtor must establish that confirmation is not likely to be followed by the liquidation or the need for further financial reorganization.  Here, the Debtor will fund the Plan through the proceeds of the Sale.  The Debtor

20

will seek the Bankruptcy Court's approval of the Sale results at a hearing to be held in conjunction with the Confirmation Hearing, based upon, *inter alia*, a showing by the Successful Purchaser that it has the financial wherewithal to close the Sale.  Accordingly, the Debtor expects that the Bankruptcy Court will determine feasibility at the Confirmation Hearing through the approval of the Sale.

### C.    Best Interests Test

The Plan also easily meets the Best Interests test, since General Unsecured Creditors stand to receive as much as 100% of their allowed clams, as compared to the likely result if the Property were liquidated under Chapter 7 of the Bankruptcy Code where the costs of the Chapter 7 administration, including the fees of the trustee and the trustee's professionals, and the loss of the transfer tax exemption that is only available in Chapter 11, will substantially diminish the net proceeds available for General Unsecured Creditors.

In addition, the Bankruptcy Court must determine that the values of the distributions to be made under the Plan to each class will equal or exceed the values which would be allocated to such class in a liquidation under Chapter 7 of the Bankruptcy Code (the "Best Interests Test").

The Best Interests Test with respect to each impaired class requires that each holder of a Claim or Interest in such class either: (i) accept the Plan, or (ii) receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the value such holder would receive or retain if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code.  The Debtor asserts that, because the Plan contemplates a Sale in Chapter 11 with the benefit of 11 U.S.C. section 1146(a) and without added administrative expenses, all holders of Claims and Interests will receive or retain under the Plan not less than such holders would receive or retain in a chapter 7 liquidation.

## VIII.   RECOMMENDATION AND CONCLUSION

For all of the reasons set forth in the Disclosure Statement, the Debtor believes that confirmation and consummation of the Plan is the most efficient alternative for creditors and equity holders.  Consequently, the Debtor urges all Creditors and holders of Equity Interests to vote to **accept** the Plan.

Dated: New York, NY
      April 14, 2026

Goldberg Weprin Finkel Goldstein LLP
*Counsel for Mariner's Gate, LLC*
125 Park Avenue, 12th Floor
New York, New York 10017
(212) 221-5700
knash@gwfglaw.com


By:    /s/ Kevin J. Nash, Esq.

22